# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

NEVA D. ENGEL,
      Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 1:13-cv-318

Beckwith, J.

Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement

of Errors (Doc. 9), the Commissioner's response in opposition (Doc. 14), and plaintiff's reply

(Doc. 16).

## I. Procedural Background

Plaintiff filed her application for DIB in March 2009, alleging disability since December

7, 2007, due to severe fibromyalgia, generalized osteoarthritis, and post-traumatic stress disorder

(PTSD). (Tr. 151). Plaintiff's application was denied initially and upon reconsideration.

Plaintiff, through counsel, requested and was granted a *de novo* hearing before Administrative

Law Judge (ALJ) George Gaffaney. Plaintiff and a vocational expert (VE) appeared and

testified at the ALJ hearing. On October 26, 2011, the ALJ issued a decision denying plaintiff's

DIB application. Plaintiff's request for review by the Appeals Council was denied, making the

decision of the ALJ the final administrative decision of the Commissioner.

## I. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.

2

2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2013.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since December 7, 2007, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: anxiety, obesity, somatoform disorder, fibromyalgia, osteoarthritis, degenerative disc disease, status post lumbar spine surgery, and gastroparesis (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. The [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the [plaintiff] can stand for six hours and sit for six hours out of an eight-hour workday. She can occasionally climb stairs, stoop, balance, crouch, crawl, or kneel. She can never climb ladders. She is limited to only occasional heat and cold extremes. The [plaintiff] is limited to simple, routine tasks with only occasional changes in a routine work setting.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[1]
>
> 7. The [plaintiff] was born [in] . . . 1962 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

_____

[1] Plaintiff's past relevant work was as a nurse. (Tr. 37, 66-67).

3

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from December 7, 2007, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 22-39).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

---

[2]The ALJ relied on the VE's testimony to find there were 2,900 unskilled, light jobs in the regional economy plaintiff was capable of performing, such as folder, sterilization clerk, and sample carrier, and 2,000 unskilled, sedentary occupations in the regional economy such as document preparer, addresser, and assembler. (Tr. 38-39, 68-69).

4

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination. Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d 742,

746 (6th Cir. 2007)). *See also Wilson*, 378 F.3d at 545-46 (6th Cir. 2004) (reversal required

even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed

to give good reasons for not giving weight to treating physician's opinion, thereby violating the

agency's own regulations).

### D. Specific Errors

The Court notes at the outset that plaintiff's Statement of Errors is extremely difficult to

decipher. While plaintiff's brief includes seven enumerated assignments of error, the arguments

under the headings do not consistently relate to the specific asserted error. For example,

underneath the error titled "The mental and nervous impairments" plaintiff presents arguments

relating to the ALJ's severity findings, the weight given to the opinion evidence in the record,

and the ALJ's credibility finding. *See* Doc. 9 at 14-18. In order to ensure a thorough and

organized review of plaintiff's arguments, the Court dissected each section in plaintiff's brief and

sorted plaintiff's arguments into like groups. Using this method, the Court will address

plaintiff's arguments in the context of the following assignments of error: (1) the ALJ

improperly assessed the severity of plaintiff's hand and neck impairments and depression and

5

stress impairments; (2) the ALJ erred in weighing the medical opinions of record; (3) the ALJ

erred in formulating plaintiff's residual functional capacity (RFC); (4) the ALJ erred in assessing

plaintiff's credibility; and (5) the ALJ presented an improper hypothetical to the VE.

1. Whether the ALJ's severity determination is substantially supported.

A severe impairment or combination of impairments is one which significantly limits the

physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). In the

physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit,

lift, push, pull, reach, carry or handle. 20 C.F.R. § 404.1521(b)(1). Basic work activities relate

to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform

physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond

to supervisors, and deal with changes in the work setting. 20 C.F.R. § 404.1521(b). Plaintiff is

not required to establish total disability at this level of the sequential evaluation. Rather, the

severe impairment requirement is a threshold element which plaintiff must prove in order to

establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357

(6th Cir. 1984). An impairment will be considered nonsevere only if it is a "slight abnormality

which has such minimal effect on the individual that it would not be expected to interfere with

the individual's ability to work, irrespective of age, education, and work experience." *Farris v.*

*Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler,* 724 F.2d 914, 920

(11th Cir. 1984)). The severity requirement is a "*de minimus* hurdle" in the sequential

evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers*, 486

F.3d at 243 n.2.

6

The ALJ determined that plaintiff had the following severe impairments: anxiety, obesity, somatoform disorder, fibromyalgia, osteoarthritis, degenerative disc disease, status post lumbar spine surgery, and gastroparesis. (Tr. 23). Plaintiff argues the ALJ erred by not also classifying her hand and neck conditions, depression, and PTSD as severe impairments.

Plaintiff asserts that she has hand and neck impairments related to her fibromyalgia that affect her ability to work. (Doc. 9 at 9). Plaintiff supports this assertion with citations to her ALJ hearing testimony that she sleeps with ice packs on her hands; her reports to the Social Security Administration that she has limited use of her hands; her reports to medical providers of bilateral hand numbness and pain; evidence of positive Tinel's signs[3] and skin sensitivity; and the opinion of her treating physician, Leela Vrishabhendra, M.D., that she has functional limitations in grasping, manipulation, handling, and fingering. (Id., citing Tr. 56, 177, 214, 264, 288, 428, 491, 509, 593, 834, 837). Plaintiff contends the ALJ erred by determining that there was insufficient objective evidence of her hand and neck impairments to warrant classifying them as severe because these impairments are related to her fibromyalgia, the severity of which is not readily confirmed by objective testing. Plaintiff's argument is not well-taken.

The only evidence plaintiff cites to regarding her neck condition is her testimony at the ALJ hearing that she suffers from neck pain, an MRI showing a "normal" cervical spine, and her subjective complaints of neck pain to medical providers. See Doc. 9 at 9, citing Tr. 56, 264, 428. There is no medical finding or opinion evidence in the record that plaintiff's neck pain impacts her functional abilities. Nor is there any evidence establishing that she has a neck

---

[3]A positive Tinel's sign is an indicator of carpal tunnel syndrome and is found when a person experiences tingling, numbness, "pins and needles," or a mild "electrical shock" sensation in the hand when tapped on the wrist. See http://www.webmd.com/pain-management/carpal-tunnel/physical-exam-for-carpal-tunnel-syndrome (last visited April 16, 2014).

impairment independent from her severe fibromyalgia impairment. Further, the ALJ's decision classifying plaintiff's neck pain as a non-severe impairment is substantially supported by objective evidence of normal findings in plaintiff's cervical spine. *See* Tr. 264, 520 (a December 2008 MRI of plaintiff's cervical spine was normal); Tr. 855 (A January 2011 MRI of plaintiff's cervical spine was unremarkable with no finding of neural foraminal stenosis). The clinical findings in the record also provide substantial support for the ALJ on this issue. *See*, *e.g.*, Tr. 430 (a September 2008 physical examination of plaintiff's neck by a rheumatologist was normal with no tenderness on palpation); Tr. 448-49 (in July 2008 plaintiff was diagnosed with a neck sprain and had mild tenderness and moderate spasm in her neck muscles, but full range of motion; she was treated with a muscle relaxant).

The Court recognizes that the ALJ mischaracterized the record when he stated that "[a]s far as cervical spine pain all MRIs and diagnostic testing have been normal" (Tr. 23) because the record includes a November 2008 x-ray of plaintiff's cervical spine revealing "[u]ncovertebral spurs on the right at C5-6 and C6-7 causing mild-to-moderate neuroforaminal stenosis." (Tr. 268). While the ALJ did not specifically discuss this abnormal x-ray, the other evidence cited above, particularly the January 2011 MRI showing no foraminal stenosis, substantially supports the ALJ's finding of no independent severe neck impairment. While there is no doubt that plaintiff has documented instances of neck pain, she concedes that her neck condition is caused by her fibromyalgia. *See* Doc. 9 at 9. Plaintiff's concession supports a finding that her neck pain is a symptom of her fibromyalgia and not a distinct impairment requiring its own severity determination. Thus, because the ALJ found plaintiff's fibromyalgia to be a severe impairment and there is no affirmative evidence establishing that plaintiff has functional limitations due to an

8

independent neck condition, it was reasonable for the ALJ to not classify it as a severe impairment.

The ALJ similarly found there were no significant objective medical findings in the record that would support classifying plaintiff's hand condition as a severe impairment under the regulations. (Tr. 23). The ALJ supported this finding by citing to evidence from May 2008 showing that plaintiff had some arthritic changes in her hands bilaterally, but she had normal strength. (*Id.*, citing Tr. 454). The ALJ also noted that Dr. Vrishabhendra found no arthritis or synovitis on examination in July 2008; August 2008 x-rays of plaintiff's hands were normal; and in September 2008, rheumatologist Sri Koneru, M.D., conducted a physical examination of plaintiff and found no synovitis and good range of motion in the upper extremities. (*Id.*, citing Tr. 275-76, 431, 448).

Plaintiff supports her assertion that her hand condition is a severe impairment by citing to her hearing testimony and subjective reports, positive Tinel's signs, and Dr. Vrishabhendra's determination that plaintiff is functionally limited in the use of her hands and fingers. However, there is no diagnosis in the record of a hand impairment, such as arthritis or carpal tunnel syndrome. While the finding of positive Tinel's sign in December 2008 (Tr. 293-94) is an indicator of carpal tunnel syndrome, the January 14, 2009 EMG showed "no evidence of carpal tunnel syndrome on the right or left." (Tr. 288). Plaintiff acknowledges that her hand problems are caused by her fibromyalgia and there is no diagnosis of an independent hand impairment in the record. *See* Doc. 9 at 9. Accordingly, the ALJ did not err in determining that plaintiff does not have a severe hand impairment.

In contrast, the ALJ erred by not classifying plaintiff's depression and PTSD as severe

9

mental impairments. The ALJ noted that the record included records from an examining

psychiatrist who found that plaintiff exhibited signs of PTSD and that treatment records from

Clermont Counseling reflect that plaintiff has exhibited depressive and panic issues. (Tr. 27).

The ALJ further noted that plaintiff "had mild depression due to the stress of her son's illness"

(*id.*, citing Tr. 445-49) and recognized that plaintiff had been diagnosed with PTSD by her

treating counselor and by psychiatrist, Tarakad Natarjan, M.D., the psychiatrist who oversaw

plaintiff's treatment at Clermont Counseling. (Tr. 30, citing Tr. 322- 30, Tr. 813, 820). The

ALJ determined that plaintiff's reports of disabling depression were inconsistent with the record

evidence and that plaintiff's depression was "mild" as the evidence showed that it stopped once

plaintiff discontinued Cymbalta. (Tr. 30). Despite the ALJ's multiple references to plaintiff's

depression and PTSD impairments, he did not make an explicit Step Two determination

regarding the severity of these conditions.

The ALJ's failure to make a severity determination as to plaintiff's depression and PTSD

leaves the Court unable to meaningfully review his decision. The instant record includes

diagnoses of PTSD from both a treating counselor and an examining psychiatrist and multiple

reports of PTSD-related nightmares (Tr. 308, 318-31, Tr. 813, 820); plaintiff's depression is

noted throughout her Clermont Counseling treatment records. *See* Tr. 1341, 1344, 1354, 1359,

1361, 1363, 1366-68. In March 2009, plaintiff's licensed social worker, Donna Burnett, opined

that due to PTSD, plaintiff is markedly impaired in her ability to remember, understand, and

follow instructions; moderately impaired in her ability to maintain attention; and has poor ability

to concentration on tasks. (Tr. 318). Most remarkable are Christ Hospital treatment records

from February 2010 when plaintiff was hospitalized for four days for suicidal ideations with

plan, extreme anxiety, nightmares, increasing depression, and PTSD. (Tr. 654, 656, 658, 738-39). Subsequent to her hospitalization, plaintiff continued treating with Ms. Burnett, and in August 2011, Ms. Burnett further opined that plaintiff continued to suffer from ongoing depression due to her chronic pain which caused occupational and social functional limitations. (Tr. 844-46).

Notwithstanding this significant evidence establishing that plaintiff has depression and PTSD that manifest in repeated nightmares and depressive episodes, the ALJ did not make a severity determination on these conditions one way or the other. To the extent the ALJ even acknowledged plaintiff's depression as a diagnosed condition, he determined that it "appeared to be situational and secondary to her chronic pain and related multiple stressors. . . ." (Tr. 31). Yet, there is no medical opinion in the record to support this conclusion. *See Winning v. Comm'r of Soc. Sec.*, 661 F. Supp.2d 804, 823-24 (N.D. Ohio 2009) (the lay observations of ALJs regarding claimants' mental impairments are not substitutes for expert medical evidence). Thus, the ALJ's minimal discussion of plaintiff's depression is not a substitution for a Step Two severity finding.

The undersigned recognizes that where an ALJ errs in finding a particular impairment "non-severe" in Step Two of the sequential analysis, the error is harmless if the ALJ finds at least one severe impairment and continues to address each impairment in determining the claimant's RFC. *See Meadows v. Comm'r of Soc. Sec.*, No. 1:07-cv-1010, 2008 WL 4911243, at *13 (S.D. Ohio Nov. 13, 2008) (citing *Maziarz v. Sec'y of H.H.S.* 837 F.2d 240, 244 (6th Cir. 1987)). Here, however, the ALJ did not erroneously classify plaintiff's depression and PTSD as non-severe. The ALJ neglected to make a severity determination in the first instance, contrary to

11

the applicable regulation.  *See* 20 C.F.R. § 404.1520(a)(4)(ii) ("[a]t the second step, we consider

the medical severity of your impairment(s).").   The ALJ's failure to make a severity

determination on plaintiff's depression and PTSD is reversible error.  *See Tuck v. Astrue*, No.

07-cv-84, 2008 WL 474411, at *8 (W.D. Ky. Feb. 19, 2008).   The undersigned therefore

recommends that this matter be reversed and remanded with instructions to the ALJ to make a

clear finding on the record regarding the severity of plaintiff's depression and PTSD.[4]

2. Whether the ALJ erred in weighing the opinions of record.

It is well-established that the findings and opinions of treating physicians are entitled to

substantial weight.   "In general, the opinions of treating physicians are accorded greater weight

than those of physicians who examine claimants only once."  *Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 530-31 (6th Cir. 1997).  *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.

1985) ("The medical opinions and diagnoses of treating physicians are generally accorded

substantial deference, and if the opinions are uncontradicted, complete deference.").   "The

treating physician doctrine is based on the assumption that a medical professional who has dealt

with a claimant and his maladies over a long period of time will have a deeper insight into the

medical condition of the claimant than will a person who has examined a claimant but once, or

who has only seen the claimant's medical records."  *Barker v. Shalala*, 40 F.3d 789, 794 (6th

Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met:

(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic

---

[4]Plaintiff's arguments that the ALJ failed to accommodate the functional limitations arising from plaintiff's depression, PTSD, and neck and hand conditions are addressed further below in connection with the Court's analysis of the ALJ's RFC

techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).   If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.   These factors include the length, nature and extent of the treatment relationship and the frequency of examination.   20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion.   20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted).   *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p).

Plaintiff asserts the ALJ erred by weighing the opinions of record in the following ways.

13

First, plaintiff claims the ALJ erred by applying a more stringent standard of review to Dr. Vrishabhendra's opinions than to those of the state agency reviewing physicians. (Doc. 9 at 12-14). Plaintiff further argues the ALJ's decision to give less weight to Dr. Vrishabhendra's opinions for lack of supporting objective evidence is erroneous given the unique nature of fibromyalgia. (Doc. 9 at 8). Moreover, plaintiff argues that contrary to the ALJ's finding, Dr. Vrishabhendra's assigned limitations are supported by substantial evidence. (Doc. 9 at 11). Second, plaintiff asserts the ALJ erred by giving greater weight to the opinions of the state agency review physicians, Maria Congbalay, M.D., and Vicki Casterline, Ph.D., because their opinions were based on an incomplete review of evidence of record. (Doc. 9 at 14). Third, plaintiff contends the ALJ erroneously weighed the opinions on plaintiff's mental impairments. Specifically, plaintiff argues the ALJ erred by giving greater weight to the opinion of the examining psychologist, Richard Sexton, Ph.D., than to plaintiff's treating counselor, social worker Donna Burnett, given plaintiff's long-term treatment relationship with Ms. Burnett and record evidence supporting Ms. Burnett's opinions. (Doc. 9 at 15-18). For the reasons that follow, the Court finds the ALJ erred in weighing the opinion evidence of record.

    a. *Dr. Vrishabhendra*

Plaintiff treated with Dr. Vrishabhendra since July 2008. (Tr. 254-79, 361-459, 892-1247). Dr. Vrishabhendra completed three assessment forms on August 8, 2011, on plaintiff's behalf. On a Fibromyalgia Syndrome Medical Assessment Form (the Fibromyalgia Form), Dr. Vrishabhendra opined that plaintiff meets the diagnostic criteria for fibromyalgia and additionally suffers from chronic fatigue syndrome, lumbar disc disease with neurological symptoms in her legs, and an anxiety disorder. (Tr. 830). Plaintiff's prognosis was "[n]o

14

expected improvement." (*Id.*). Dr. Vrishabhendra reported that plaintiff suffers from severe pain/paresthesia in the lower legs and mild pain in the upper extremities and has other symptoms such as muscle weakness, chronic pain, and depression. (*Id.*). Dr. Vrishabhendra supports her opinion with reference to clinical findings such as spasm, abnormal gait, tenderness, motor loss, and weight change; she also cited positive objective findings from a lumbar MRI and an EMG of plaintiff's sciatic nerve. (Tr. 831). Dr. Vrishabhendra opined plaintiff's symptoms would frequently interfere with the attention and concentration needed to perform even simple work tasks. (*Id.*). She further opined that plaintiff would be unable to perform or be exposed to public contact, routine, repetitive tasks at a consistent pace, strict deadlines, close interaction with coworkers/supervisors, fast-paced tasks, and work hazards. (Tr. 832). Dr. Vrishabhendra also noted that plaintiff's side effects from medication included drowsiness/sedation and nausea. (*Id.*). Regarding plaintiff's physical functional abilities, Dr. Vrishabhendra opined that plaintiff could walk less than one block, sit only twenty minutes, and stand ten minutes. (*Id.*). Plaintiff would need to lie down or prop her feet after sitting or standing. (*Id.*). In an eight-hour workday, plaintiff could sit and stand/walk less than two hours. (*Id.*). Plaintiff would need to take six to eight unscheduled breaks for at least ten minutes due to pain/paresthesia and chronic fatigue. (*Id.*). She would need to elevate her legs to hip level for 50% of an eight-hour workday due to edema and pain/paresthesia. (*Id.*). Plaintiff can rarely lift less than ten pounds and never lift more than ten pounds and never twist, stoop, or bend. (Tr. 833). Dr. Vrishabhendra further determined that plaintiff would have less than 10% ability to reach and reduced hand abilities by 30%, and her finger manipulations were reduced by 50%. (Tr. 834).

15

Dr. Vrishabhendra stated that plaintiff would be absent four or more days a month due to her impairments and treatment. (*Id.*).

Dr. Vrishabhendra also completed a Medical Assessment of Ability to do Work-related Activities form (Physical) (the Physical RFC Form). (Tr. 836-38). Dr. Vrishabhendra opined that plaintiff's abilities to lift, carry, stand, and walk, were impaired as follows: plaintiff is incapable of occasionally or frequently lifting or carrying any weight and can stand or walk for one to two hours in an eight-hour work day, but for zero hours at a time uninterrupted due to lack of balance and nerve damage/neuropathy. (Tr. 836). Dr. Vrishabhendra opined that plaintiff could sit for one to two hours in an eight-hour workday based on her treatment with "neurosurgeon/pain management" and being status post-back surgery in February 2011. (Tr. 836-37). Plaintiff could occasionally stoop but never crouch, kneel, crawl, climb, or balance. (Tr. 837). She is also limited in her abilities to reach, handle, finger, feel, push, and pull. (Tr. 837). Environmental limitations include heights, moving machinery, chemicals, temperature extremes, dust, noise, fumes, humidity, and vibration. (Tr. 838). Dr. Vrishabhendra concluded that plaintiff was able to take care of basic activities of daily living like eating and changing clothes but required help with walking due to decreased balance and recurrent falls. (*Id.*).

Dr. Vrishabhendra also completed a Medical Assessment of Ability to do Work-related Activities form (Mental) (the Mental RFC Form). (Tr. 840-42). As the opinions expressed by Dr. Vrishabhendra in the Mental RFC Form are not pertinent to the ALJ's weighing of her opinion, the contents of this form are not reiterated here.

The ALJ gave "little weight" to Dr. Vrishabhendra's opinions on the grounds of inconsistency; infrequent treatment; the doctor's area of expertise; lack of objective evidentiary

support; and overreliance on plaintiff's subjective reports. (Tr. 35-36). The ALJ explained that

Dr. Vrishabhendra's "own treatment notes do not indicate findings that would cause such

extreme limitations[,]" citing as an example normal results from a July 15, 2011 examination.

(Tr. 35, citing Tr. 896-899). The ALJ further determined that Dr. Vrishabhendra's opinions

were internally inconsistent as "in one form she said [plaintiff] could rarely lift less than ten

pounds and never lift more than ten pounds but in another form dated the same day she said

[plaintiff] could lift/carry zero pounds." (Id., citing Tr. 833, 836). The ALJ also found Dr.

Vrishabhendra's opinions that plaintiff had certain physical functional limitations, such as a

limited ability to reach or manipulate or stand or walk, were unsupported by her own treatment

notes which "never mentioned abnormalities in gait or reduced strength. . . ." (Tr. 35). The

ALJ further noted that plaintiff's actual treatment visits with Dr. Vrishabhendra were "relatively

infrequent" in the last few years, finding plaintiff only treated with her a few times per year, and

found that "[t]he course of treatment pursued by the doctor has not been consistent with what one

would expect if [plaintiff] were truly disabled." (Tr. 35). The ALJ also noted that Dr.

Vrishabhendra's opinion appeared to rely on assessments of impairments outside her area of

expertise as an internist. (Id.). The ALJ speculated that Dr. Vrishabhendra may have expressed

these opinions out of sympathy for plaintiff or a desire to "avoid unnecessary doctor/patient

tension." (Tr. 36). For the reasons that follow, the ALJ's decision to give "little weight" to Dr.

rishabhendra's opinions is not supported by substantial evidence.

  First, the ALJ mischaracterized Dr. Vrishabhendra's opinions regarding plaintiff's lifting

ability. In the Fibromyalgia Form, Dr.Vrishabhendra opined that plaintiff could "rarely" lift less

than ten pounds; could "never" lift weights greater than ten pounds; and could not lift any weight

"occasionally" or "frequently." (Tr. 833). The Physical Form asked only "[h]ow many pounds can [plaintiff] lift and carry – *occasionally* [and] *frequently*. (Tr. 836) (emphasis in original). Dr.Vrishabhendra's response on the Physical Form that plaintiff could not lift any weight "occasionally" or "frequently" is entirely consistent with her opinion as expressed on the Fibromyalgia Form. The ALJ's conclusion to the contrary is without any support. Further, the ALJ's reliance on a single "unremarkable" physical examination in July 2011 to support his decision to discount Dr.Vrishabhendra's opinion based on inconsistency is misplaced given the ample treatment notes from the doctor reflecting abnormal findings. *See*, *e.g.*, Tr. 409 (a November 2008 physical exam with Dr.Vrishabhendra revealed that plaintiff had tenderness in her cervical spinous processes, moderate tenderness of the neck and cervical paravertebral muscles, moderate spasm of the paravertebral muscles, and mild spasm and tenderness in the lumbar muscles); Tr. 420 (in October 2008, Dr. Vrishabhendra found plaintiff had significant muscle spasm in the neck and upper back area and multiple tender points and trigger points); Tr. 441 (in December 2008, plaintiff had moderate spasm of the cervical paravertebral muscles and neck muscles with some limb muscle tenderness); Tr. 448 (same in July 2008); Tr. 944 (in September 2010 plaintiff was positive for myalgias and had abdominal tenderness); Tr. 1034 (plaintiff presented with moderate generalized tenderness in October 2009); Tr. 1048 (in August 2009 plaintiff exhibited and reported minimal reduced range of motion in her hip and reduced range of motion in the spine, decreased sensation in the right leg, and numbness in the left foot); Tr. 1110, 1119 (in May 2009 plaintiff had multiple areas of tenderness throughout her back, mild crepitation with knee range of motion, sensory examination was decreased right greater than left). The ALJ may not selectively cite to a solitary treatment record to support his finding while

ignoring extensive evidence establishing that Dr. Vrishabhendra's opinions are consistent with her treatment notes. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240-41 (6th Cir. 2002). Because the ALJ selectively cited to a single record showing a normal examination to the exclusion of substantial evidence to the contrary, his decision to discount Dr. Vrishabhendra's opinions due to inconsistencies with her treatment notes is not supported by substantial evidence.[5]

The other reasons given by the ALJ for discounting Dr. Vrishabhendra's opinions also lack substantial support in the record. Insofar as the ALJ discredited these opinions for resting "on assessments of impairments outside her area of expertise[,]" (Tr. 35), this is not a "good reason" under *Wilson* for discounting a treating physician's opinion. As an internist, Dr. Vrishabhendra's practice is limited and, consequently, she referred plaintiff to a variety of specialists for diagnoses and objective testing. *See, e.g.*, Tr. 291-95, 397-403 (plaintiff was referred to an orthopedist for complaints of neck pain, upper extremity pain, and paresthesias); Tr. 427-32 (plaintiff was referred to a rheumatologist for her fibromyalgia and arthritis); Tr. 497-518 (plaintiff was referred to a pain specialist to treat her pain). The fact that Dr. Vrishabhendra considered the resulting assessments from these specialists in forming her opinions is a factor weighing in favor of giving her opinions greater weight given their support

---

[5]To the extent the ALJ appears to conclude that Dr. Vrishabhendra's opinions are inconsistent with her direction to plaintiff to begin a progressive daily aerobic exercise program, the Court finds no inconsistency here. "[T]he fact that a [fibromyalgia] patient is encouraged to remain active does not reflect the manner in which such activities may aggravate the patient's symptoms." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 349 (6th Cir. 2007) (also noting that a treating physician's advice to a fibromyalgia patient to "remain as active as possible" was not inconsistent with the doctor's opinion that the patient had functional limitations which precluded her ability to work).

19

by and consistency with other record evidence.[6]   It was therefore proper for Dr. Vrishabhendra

to rely on the findings of these specialists in formulating her opinions.

Additionally, Dr. Vrishabhendra's findings of myalgia, tenderness, and fatigue (Tr. 830,

936, 944, 1002, 1019, 1034, 1093) and attendant limitations (Tr. 832-34, 836-38) are consistent

with plaintiff's diagnosis of fibromyalgia, for which she received treatment by Dr.

Vrishabhendra, rheumatologist Dr. Koneru, and pain management specialist Atul Chandoke,

M.D.   By focusing on the lack of objective medical findings in assessing the weight to Dr.

Vrishabhendra and, by extension, plaintiff's RFC, the ALJ failed to evaluate plaintiff's

fibromyalgia in accordance with Sixth Circuit precedent.

Fibromyalgia is a condition that "causes severe musculoskeletal pain which is

accompanied by stiffness *and fatigue* due to sleep disturbances." *Preston v. Sec'y of H.H.S.*,

854 F.2d 815, 817-820 (6th Cir. 1988) (emphasis added).[7]   In the context of social security

disability cases, fibromyalgia presents particularly challenging issues in determining credibility,

RFC, and disability because its symptoms are entirely subjective.   *See Rogers,* 486 F.3d at 243

n.3.   Similar to chronic fatigue syndrome, *Cohen v. Sec'y of H.H.S.*, 964 F.2d 524, 529 (6th Cir.

1992), fibromyalgia is not amenable to objective diagnosis and standard clinical tests are "not

highly relevant" in diagnosing or assessing fibromyalgia or its severity.   *Preston,* 854 F.2d at

820.   *See also Rogers,* 486 F.3d at 243-44 ("in light of the unique evidentiary difficulties

---

[6]The notion that a physician's opinion is due greater weight when it takes into account reports of medical specialists regarding particular impairments is not a novel one.   *See* Social Security Ruling 96-6p (explaining that the opinion of a State agency reviewing physician may be entitled to greater weight than the opinions of treating or examining sources where it is based on a review of a case record that includes medical reports from a specialist on the claimant's particular impairment).

[7]In *Preston,* the term "fibrositis" was used instead of "fibromyalgia."   Currently, the preferred term is fibromyalgia, rather than the older terms fibrositis and fibromyositis.   *See* Merck Manual Online, http://www.merckmanuals.com/professional/musculoskeletal_and_connective_tissue_disorders/bursa_muscle_and_tendon_disorders/fibromyalgia.html (last visited May 7, 2014).

associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon

objective evidence are not particularly relevant"); *Swain v. Comm'r of Soc. Sec'y*, 297 F. Supp.2d

986, 990 (N.D. Ohio 2003) ("[f]ibromyalgia is an 'elusive' and 'mysterious' disease. It has no

known cause and no known cure. Its symptoms include severe musculoskeletal pain, stiffness,

fatigue, and multiple acute tender spots at various fixed locations on the body.") (footnotes and

citations omitted). As the *Preston* Court explained:

> [F]ibrositis [the term previously used for fibromyalgia] causes severe
> musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep
> disturbances. In stark contrast to the unremitting pain of which fibrositis patients
> complain, physical examinations will usually yield normal results-a full range of
> motion, no joint swelling, as well as normal muscle strength and neurological
> reactions. There are no objective tests which can conclusively confirm the
> disease; rather it is a process of diagnosis by exclusion and testing of certain
> 'focal tender points' on the body for acute tenderness which is characteristic in
> fibrositis patients. The medical literature also indicates that fibrositis patients
> may also have psychological disorders. The disease commonly strikes between
> the ages of 35 and 60 and affects women nine times more than men.

854 F.2d at 817-18. *In accord Rogers*, 486 F.3d at 244.

It is undisputed that plaintiff suffers from fibromyalgia. The ALJ made a factual finding

at Step 2 of the sequential evaluation process that plaintiff's fibromyalgia is a severe impairment

under the Social Security regulations. (Tr. 23, Finding # 3, citing 20 C.F.R. § 404.1520(c)).

Once the ALJ made a factual finding that plaintiff suffers from the severe impairment of

fibromyalgia, it was incumbent upon the ALJ to apply the correct legal standard for evaluating

this impairment and to not discount the opinion of plaintiff's treating physician based on the lack

of "objective" evidence. Dr. Vrishabhendra's progress notes and the notes of the specialists she

relied on document consistent complaints of pain, sleep problems, chronic fatigue and

depression, and muscle tenderness and spasm – all classic symptoms associated with

21

fibromyalgia. (Tr. 409, 420, 441, 448, 944, 1034, 1048, 1110, 1119). *See Rogers*, 486 F.3d at 244; *Preston*, 854 F.2d at 820. The evidence from plaintiff's other treating and examining physicians is likewise consistent for fibromyalgia. *See* Tr. 430 (in September 2008, Dr. Koneru, rheumatologist, found plaintiff had limited range of motion in her joints and more than 11 tender points on examination and diagnosed her with fibromyalgia); Tr. 466-67 (consultative examining psychologist Dr. Sexton opined that plaintiff's limitations in relating to others, maintain attention, concentration, persistence and pace, and to withstand stress and pressures of daily work activity were compounded by her physical conditions); Tr. 491 (in July 2009, pain management specialist Dr. Chandoke found significant diffuse muscle spasms and tenderness and 12 out of 18 tender points during a fibromyalgia examination and opined that plaintiff's pain was responsible for her poor quality of sleep). The ALJ's reliance on the lack of "objective" evidence to discount Dr. Vrishabhendra's opinions is inconsistent with plaintiff's diagnosis of fibromyalgia. *Rogers*, 486 F.3d at 243. The ALJ's decision in this regard is not supported by substantial evidence.

Likewise, the ALJ's decision to discount the weight given to Dr. Vrishabhendra's opinion due to her reliance on plaintiff's subjective reports of symptoms and limitations is flawed. Given the nature of fibromyalgia and the absence of objective evidence to confim its severity, a physician must necessarily rely on his or her patient's self-reported pain and other symptoms as an "essential diagnostic tool" in determining the plaintiff's limitations. *See Johnson v. Astrue*, 597 F.3d 409, 412 (1st Cir. 2009). The fact that Dr. Vrishabhendra relied on plaintiff's subjective reports of pain in reaching an opinion concerning plaintiff's limitations was not only proper but necessary given her fibromyalgia impairment. *Id.* at 414.

Lastly, the Court notes that while the ALJ found that "[t]he course of treatment pursued by [Dr. Vrishabhendra] has not been consistent with what one would expect if [plaintiff] were truly disabled[,]" (Tr. 35) he does not explain what the expected course of treatment would be. Nor does he cite to any opinion evidence that comports with this finding. For this and the above reasons, the ALJ's decision to give "little weight" to Dr. Vrishabhendra's opinions is not substantially supported by the record evidence. This matter should therefore be reversed and remanded with directions to the ALJ to weigh Dr. Vrishabhendra's opinions consistent with this decision.

b. *The State Agency Doctors*

The ALJ gave "great weight" to the RFC assessments of state agency physician Maria Congbalay, M.D., and state agency psychologist Vicki Casterline, Ph.D. Dr. Congbalay provided her physical RFC assessment on August 21, 2009. (Tr. 521-28). She opined that plaintiff could lift and/or carry and push and/or pull up to 20 pounds occasionally and 10 pounds frequently; could stand and/or walk about six hours in an eight-hour workday; and could sit for about six hours in an eight-hour workday. (Tr. 522). Dr. Congbalay further opined that plaintiff could never climb ladders, ropes, or scaffolds, but could frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. (Tr. 523). Dr. Congbalay deemed the nature of plaintiff's allegations to be credible, but found them to be "slightly inconsistent" with the record evidence in the file. (Tr. 526). Dr. Congbalay's assessment was affirmed by state agency reviewing physician Leigh Thomas, M.D., on March 8, 2010. (Tr. 811).

Dr. Casterline provided her mental RFC assessment on June 10, 2009. (Tr. 468-84). Dr. Casterline opined that plaintiff has mild restrictions in her activities of daily living and in

23

maintaining social functioning; has moderate difficulties in maintaining concentration,

persistence or pace; and has had no episodes of decompensation of extended duration. (Tr. 482).

Dr. Casterline gave weight to the opinion of consultative psychologist Dr. Sexton with regard to

plaintiff's functioning. (Tr. 470). She found plaintiff's statements about her condition are

generally consistent with the medical evidence. *Id.* Dr. Casterline concluded that plaintiff is

able to sustain work tasks in a setting where work duties remain relatively static. *Id.* State

agency reviewing psychologist Alice Chambly, Psy.D., affirmed Dr. Casterline's assessment on

April 9, 2010. (Tr. 823).

The ALJ explained his decision to give "great weight" to the assessments of Dr.

Casterline and Dr. Congbalay as follows:

> The opinions were rendered by expert medical professionals that had the
> opportunity to review the evidence of record. Their opinions are consistent with
> the objective medical evidence of record. As specialists for the Social Security
> Administration, the State agency medical consultants are well-versed in the
> assessment of functionality as it pertains to the disability provisions of the Social
> Security Act, as amended.

(Tr. 36).

One of the factors the ALJ is to consider in weighing medical opinions is "the extent to

which an acceptable medical source is familiar with the other information in [the] case record."

20 C.F.R. § 404.1527(d)(6). A state agency reviewing doctor's opinion may be entitled to

greater weight than that of a treating or examining doctor in certain circumstances, such as when

the "[s]tate agency medical ... consultant's opinion is based on a review of a complete case

record that . . . provides more detailed and comprehensive information than what was available to

the individual's treating source." *Blakley v. Comm'r*, 581 F.3d 399, 409 (6th Cir. 2009)

(quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)). In *Blakley* the ALJ's

decision was reversed where the non-examining sources had not reviewed "much of the over 300 pages of medical treatment . . . by Blakely's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Blakley*, 581 F.3d at 409 (internal quotation omitted). Therefore, under *Blakley*, the ALJ may credit the opinion of a state agency reviewing doctor who has failed to review a complete record if he articulates the reasons for doing so and such reasons are supported by substantial evidence.

The ALJ here erred by giving "great weight" to the opinions of Dr. Congbalay and Dr. Thomas because there was a significant amount of evidence not in the record at the time of their record reviews and because the ALJ did not recognize that their opinions were based on incomplete reviews. The instant record includes over 650 pages of medical records documenting the severity of plaintiff's physical and mental impairments that were not in existence at the time these doctors reviewed the record.

In terms of plaintiff's physical impairments, this evidence includes Dr. Vrishabhendra's opinions (Tr. 829-42); treatment notes from plaintiff's pain management provider documenting, *inter alia*, swelling in the ankles and feet (Tr. 518, 620) and abnormal gait (Tr. 848, 850); a January 2011 CAT scan of plaintiff's lumbar spine showing degenerative changes (Tr. 853); a December 2010 EMG showing left L5 radiculopathy with chronic properties and acute axenal degeneration (Tr. 860); and records of plaintiff's back surgery (Tr. 909-20). While some of this evidence was in the record at the time Dr. Thomas reaffirmed Dr. Congbalay's initial RFC assessment, much of it was not. The ALJ failed to acknowledge the limited nature of these doctors' reviews or provide any explanation for why, despite their review of only a portion of the

25

record, he found them deserving of "great weight." In view of the considerable record evidence

not reviewed by either Dr. Congbalay or Dr. Thomas, especially the opinion evidence from Dr.

Vrishabhendra, the ALJ erred by affording their opinions "great weight."

As for plaintiff's mental impairments, Dr. Casterline's June 2009 opinion was rendered

prior to plaintiff's admission to the hospital for suicidal ideation in February 2010 and without

the benefit of reviewing the August 2011 opinion rendered by plaintiff's counselor. Again, the

ALJ did not acknowledge the limited nature of this review or justify giving Dr. Casterline's

opinion "great weight" despite the existence of significant post-review evidence and therefore

erred in doing so. The Court acknowledges that Dr. Chambly had the opportunity to review the

February 2010 evidence prior to affirming Dr. Casterline's opinion in April 2010. Nevertheless,

the ALJ's decision to give "great weight" to this opinion is without substantial support as Dr.

Chambly's description of the March 2010 incidence fails to accurately portray the severity of this

event. The hospital treatment records document "strong" and repeated thoughts of suicide, night

terrors, and inability to sleep. The mental status exam showed:

> [Plaintiff's] mood appears anxious. Her speech is rapid and/or pressured. She is
> agitated and is hyperactive. . . . She expresses impulsivity and inappropriate
> judgment. She exhibits a depressed mood. She expresses homicidal and
> suicidal ideation. She expresses suicidal plans.

(Tr. 654, 656). Dr. Chambly's recitation of this evidence provides simply that "[i]n 2/10

[plaintiff] experienced an exacerbation of symptoms precipitated by her son's illness. She was

briefly hospitalized for 4 days, psych meds were again prescribed and she improved quickly.

Follow-up appt with psychiatry documented normal mental status and medication compliance."

(Tr. 823, citing Tr. 662, 813-14). While Dr. Natarjan found that plaintiff had an unremarkable

mental status exam on March 8, 2010 (Tr. 813-14), later generated evidence from Ms. Burnett

contradicts Dr. Chambly's assessment that plaintiff's issues resolved with a medication adjustment. *See, e.g.*, Tr. 1339 (in July 2011 plaintiff exhibited irritability and increased anxiety despite being compliant with medication); Tr. 1341 (in June 2011 plaintiff presented with increased depression and reported insomnia and nightmares); Tr. 1361 (plaintiff reported an increase in depression and anxiety and decrease in sleep in August 2010). Further, Dr. Chambly did not review Ms. Burnett's August 2011 opinion that plaintiff continues to suffer from a depressed mood that causes severe functional limitations. *See* Tr. 844-46. In consideration of the limited nature of Dr. Casterline and Dr. Chambly's reviews, the ALJ's decision to give "great weight" to their opinions was erroneous in the absence of any explanation as to why the later-generated evidence was not significant.[8]

   c. *The mental impairment opinions*

   Plaintiff further argues the ALJ erred by discounting the opinions of Ms. Burnett while giving "great weight" to Dr. Sexton's opinion because Ms. Burnett had an ongoing treatment relationship with plaintiff and Dr. Sexton evaluated plaintiff only once.

   Plaintiff began treating with Ms. Burnett at Clermont Counseling Center in March 2009 for depression, anxiety attacks, and PTSD. *See* Tr. 302-05, 310-15, 322-38. Plaintiff reported no prior mental health treatment nor had she ever been psychiatrically hospitalized. Ms. Burnett found plaintiff was alert, oriented, and organized, and had goal directed thought processes. Plaintiff reported a history of a few weeks of suicidal thoughts due to issues with pain and

---

[8]The Court finds that plaintiff's argument that the ALJ erred by not considering the specialization areas of Dr. Congbalay and Dr. Thomas is not well-taken. To support this argument, plaintiff includes in her Statement of Errors internet printouts which purportedly identify these doctors' areas of practice. *See* Doc. 9 at 25-29. Plaintiff fails to explain why this evidence was not presented to the Commissioner prior to the ALJ's hearing and decision. Moreover, this Court cannot consider new evidence in reviewing the ALJ's decision. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Accordingly, the Court declines to consider this evidence and it is stricken from the record.

insomnia. Ms. Burnett also found plaintiff's short-term memory was poor. Plaintiff was cooperative with good insight and judgment. Ms. Burnett diagnosed plaintiff with PTSD and an adjustment disorder, mixed anxiety, and depressed mood. She assigned plaintiff a Global Assessment of Functioning ("GAF") score of 59.[9] (Tr. 331). Plaintiff continued to receive counseling at Clermont Counseling Center over the next two years through at least August 2011. (Tr. 306-09, 1336-38, 1341-43, 1347, 1356, 1363, 1366-67, 1374, 1377-78). Her progress notes show that plaintiff continued to report panic attacks with night terrors, depression and hopelessness due to insomnia, financial issues, and her ill stepson. *Id.*

In April 2009, Ms. Burnett completed a second Daily Activities Questionnaire at the request of the state agency after having seen plaintiff on three occasions. (Tr. 359-60). Ms. Burnett reported that plaintiff suffers from fatigue, depressed mood, pain, and lack of sleep which might prevent her from engaging in work activities. (Tr. 359). Mr. Burnett further reported that plaintiff is able to prepare food, do chores at her own pace, drive, self-groom, shop for short periods of time, and manage her own finances. (Tr. 360).

In December 2009, Ms. Burnett completed a Mental Status Questionnaire and another Daily Activities Questionnaire at the request of the state agency. (Tr. 317-21). Ms. Burnett reported that plaintiff has PTSD and a history of depression, anxiety, and insomnia and that her symptoms include night terrors with flashbacks. (Tr. 318). Ms. Burnett opined that plaintiff was markedly impaired in her ability to remember, understand and follow directions; was

---

[9]A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id*. at 34. Individuals with scores of 51-60 are classified as having "moderate" symptoms. *Id.* at 32.

moderately impaired in her ability to maintain attention; had poor concentration on tasks; self-isolated; and was poor at adaption.  (*Id*.).  When asked to provide examples of how plaintiff's ability to work might be hindered, Ms. Burnett stated that plaintiff had a very low tolerance for stress and that she could not work with the level of pain she currently experiences. (Tr. 320).

On August 22, 2011, Ms. Burnett opined that plaintiff had "poor" ability to deal with the public, use judgment, deal with work stress, function independently, maintain attention/concentration, and persist at a work-like task.  (Tr. 844).  Plaintiff had "fair" ability to follow work rules, relate to co-workers, and interact with supervisors.  (*Id*.).  To support this opinion, Ms. Burnett stated that plaintiff had "poor concentration/focus, need[s] rest periods several times a day, [and would have] attendance problems due to chronic pain."  (*Id*.).  Ms. Burnett also opined that plaintiff had "poor" ability to understand, remember, and carry out complex and detailed job instructions.  (Tr. 845).  She had "good" ability to understand, remember, and carry out simple job instructions.  (*Id*.).  Ms. Burnett noted plaintiff's memory is impaired and she does not think clearly.  (*Id*.).  Plaintiff's ability to maintain personal appearance and behave in an emotionally stable was good; her ability to relate predictably in social situations was "fair"; but her ability to demonstrate reliability was "poor."  (*Id*.).  Ms. Burnett concluded that plaintiff had chronic pain and ongoing depression and as a result she would not be reliable.  (*Id*.).

Dr. Sexton examined plaintiff on May 20, 2009.  (Tr. 461-67).  Dr. Sexton diagnosed plaintiff with an anxiety disorder, not otherwise specified, and a somatoform disorder, not otherwise specified.  (Tr. 466).  Dr. Sexton opined that plaintiff's mental ability to relate with

29

others, including co-workers and supervisors, is mildly impaired by her psychiatric symptomatology compounded by her physical problems and that her ability to understand, recall, and carry out simple instructions is also mildly impaired. (*Id.*). Dr. Sexton further opined that plaintiff's abilities to maintain attention, concentration, persistence, and pace and to withstand the stress and pressures associated with day-to-day work activity are moderately impaired. (Tr. 466-67).

The ALJ gave "great weight" to Dr. Sexton's opinion finding it to be well-supported and consistent with other substantial evidence in the record. The ALJ further supported his decision by noting that "Dr. Sexton had the opportunity to examine [plaintiff] and was able to listen to her subjective complaints. He completed specific testing to determine [plaintiff's] mental limitations." (Tr. 34).

The ALJ did not assign any specific weight to Ms. Burnett's opinions but found that her opinion was "less persuasive" because she treated plaintiff infrequently and sporadically; her treatment notes did not reveal the type of abnormalities expected of a person as limited as plaintiff per Ms. Burnett's opinions; she relied heavily on plaintiff's subjective reports; she based her assessment on plaintiff's pain impairment, an area outside of her expertise; her opinions were not supported by other substantial evidence; and, as a licensed social worker, she is not an acceptable medical source. (Tr. 33). The ALJ's decision to discount Ms Burnett's opinions is not supported by substantial evidence.

The Court recognizes that the ALJ was not required to give any special weight to Ms. Burnett's opinions as social workers are not "acceptable medicals sources." Only "acceptable medical sources" as defined under 20 C.F.R. § 404.1513(a) can provide evidence which

establishes the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight.[10] Although information from "other sources" cannot establish the existence of a medically determinable impairment, the information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* Factors to be considered in evaluating opinions from "other sources" who have seen the claimant in their professional capacities include how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment. *Id.* *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Not every factor will apply in every case. SSR 06-03p. Despite Ms. Burnett's status as an "other source," the Court finds the ALJ erred in discounting her opinions and giving "great weight" to Dr. Sexton's as his rationale for doing so is not substantially supported by the evidence.

First, the ALJ credited Dr. Sexton's opinion, in part, because he was able to "listen to [plaintiff's] subjective complaints," but then discredited Ms. Burnett's opinions for the very same reason. The ALJ may not arbitrarily determine that one source is permitted to rely on certain evidence while another is not.

---

[10]SSR 06-03p provides that the Commissioner will consider all available evidence in an individual's case record, including evidence from medical sources. The term "medical sources" refers to both "acceptable medical sources" and health care providers who are not "acceptable medical sources." *Id.* (citing 20 C.F.R. § 404.1502 and § 416.902). Licensed physicians and licensed or certified psychologists are "acceptable medical sources." *Id.* (citing 20 C.F.R. § 404.1513(d)(1) and § 416.913(d)). Licensed social workers are not "acceptable medical sources" and instead fall into the category of "other sources." *Id.* (citing 20 C.F.R. § 404.1513(d)(1) and § 416.913(d)).

Second, contrary to the ALJ's determination, Ms. Burnett's opinions are consistent with her treatment notes and are supported by other substantial evidence of record. The ALJ failed to cite to any treatment notes which he deemed inconsistent with Ms. Burnett's opinion and cited only to her August 22, 2011 opinion wherein she recognized that despite having significant functional limitations, plaintiff presented with organized thoughts; an appropriate mood and affect; good insight; fair judgment; no delusions or hallucinations; normal speech; and no suicidal or homicidal ideation. (Tr. 846). The ALJ failed to acknowledge that these findings are not incompatible with the panic attacks and insomnia plaintiff experiences due to her mental impairments and that these symptoms functionally limit plaintiff's ability to concentrate or demonstrate reliability in the work setting. Further, Ms. Burnett's treatment notes regularly document that plaintiff experiences anxiety, depression, and nightmares and is fatigued due to her pain; these findings are wholly consistent with her opinions regarding plaintiff's functional limitations. *See* Tr. 1336 (in August 2011 plaintiff reported being in pain all day and appeared "starry-eyed" due to pain medication); Tr. 1341 (in June 2011 plaintiff reported insomnia and nightmares and was observed to have a depressed mood); Tr. 1366-67 (in July 2010 plaintiff reported increased depression and anxiety and explored with Ms. Burnett how to avoid self-isolating); Tr. 1377-78 (following her suicidal episode, plaintiff reported out of control anxiety attacks and night terrors and waking up screaming and crying); Tr. 1390 (in March 2009 plaintiff reported that her pain and stress caused fear and panic). Ms. Burnett's findings and opinions are also supported by notes from Dr. Natarjan who noted increased anxiety and depression in July and August 2010 (Tr. 1361, 1368) and notes from Dr. Vrishabhendra and other physicians who documented their observations and plaintiff's reports of pain-related

32

depression, anxiety, and panic attacks.  (Tr. 387, 413, 419, 429, 441, 518, 606).  Accordingly, the ALJ's finding that Ms. Burnett's opinions are not consistent with her treatment records and not supported by other record evidence is without substantial support.

Lastly, the record does not support the ALJ's finding that plaintiff's treatment with Ms. Burnett was "relatively infrequent and sporadic."  (Tr. 33).  Plaintiff treated with Ms. Burnett from March 2009 to at least August 2011.  (Tr. 1336-1416).  A review of the record establishes that over the course of their almost two-and-one-half year treating relationship, plaintiff saw Ms. Burnett or Dr. Natarjan approximately once a month, not including occasional cancelled appointments.  *See* Tr. 1334, 1339, 1341, 1344, 1347, 1350, 1354, 1356, 1361, 1363, 1366, 1367, 1368, 1372, 1374, 1375, 1377, 1378, 1387, 1382, 1383, 1388, 1390, 1391, 1392.  Notably, after plaintiff's suicidal episode in February 2010 she treated with Ms. Burnett on a weekly basis for a short period.  *See* Tr. 1374, 1375, 1377.  The ALJ's description of this treatment as "infrequent and sporadic" mischaracterizes the record such that it does not substantially support his decision to discount Ms. Burnett's opinions.

For the above reasons, this matter should reversed and remanded with instructions to the ALJ to reevaluate Ms. Burnett's opinions consistent with this Report and Recommendation.[11]

3. Whether the ALJ's RFC formulation is substantially supported.

Given the above findings that remand is necessary because the ALJ improperly assessed the severity of plaintiff's depression and PTSD and erred in weighing the opinion evidence of record, the ALJ's RFC formulation will necessarily be affected on remand.  The Court therefore

---

[11]Aside from claiming that Ms. Burnett's opinions should have been given greater weight, plaintiff does not put forth any developed argument regarding the weight the ALJ gave to Dr. Sexton's opinion.  It is therefore unnecessary for the Court to further analyze the ALJ's decision to give Dr. Sexton's findings "great weight."

declines to reach the majority of plaintiff's arguments regarding whether the ALJ erred in his initial RFC formulation. However, plaintiff's argument that the ALJ's RFC formulation is erroneous because it fails to accommodate her moderate limitations in concentration, persistence, or pace warrants consideration as it is grounds for remand irrespective of the above findings.

Consistent with the opinions of Ms. Burnett (Tr. 844), Dr. Sexton (Tr. 466), Dr. Casterline (Tr. 482), and Dr. Chambly (Tr. 823), the ALJ determined that plaintiff had moderate limitations in her ability to maintain concentration, persistence or pace. (Tr. 25). Yet, the ALJ's RFC formulation limiting her "to simple, routine tasks with only occasional changes in a routine work setting" (Tr. 26) fails to accommodate plaintiff's moderately limitations in concentration. *See Ball v. Comm'r of Soc. Sec.*, No. 09-cv-684, 2011 WL 765978, at *4 (S.D. Ohio Feb. 25, 2011) (Beckwith, J.). *See also Benton v. Comm'r of Soc. Sec.*, 511 F. Supp.2d 842, 849 (E.D. Mich. 2007) (RFC for simple, routine, repetitive work is not adequate where plaintiff had moderate difficulties with concentration as it remains unclear whether plaintiff will be able to meet quotas, stay alert, or work at a consistent pace); *Candela v. Astrue*, No. 1:10-cv-1603, 2011 WL 3205726, at *10-11 (N.D. Ohio July 28, 2011) (where plaintiff has established moderate concentration difficulties, ALJ must include limitation in formulating the hypothetical question posed to the VE by determining, for example, whether plaintiff would be able to complete a normal work week). Remand is therefore necessary as the ALJ's RFC formulation fails to adequately account for the moderate concentration and attention limitations found by the ALJ.

34

On remand, the ALJ should reformulate plaintiff's RFC consistent with this opinion in its entirety and, specifically, formulate one which properly accounts for plaintiff's moderate limitations in concentration

4. Whether the ALJ erred in assessing plaintiff's credibility.

Plaintiff raises numerous arguments regarding how the ALJ erred in assessing her credibility, such as the ALJ's failure to acknowledge that plaintiff performs activities of daily living at her own pace or the variety of methods she utilizes to manage her pain, including taking pain medication and receiving chiropractic treatment and trigger point injections. *See* Doc. 9 at 18-22. As stated above, the undersigned recommends that this matter be remanded for reconsideration of the opinion evidence. Because the ALJ's reconsideration of this opinion evidence may impact the remainder of the ALJ's sequential analysis findings, it is not necessary to address plaintiff's credibility argument. *See Trent v. Astrue*, No. 1:09cv2680, 2011 WL 841529, at *7 (N.D. Ohio Mar. 8, 2011). In any event, even if plaintiff's third assignment of error had merit, the result would be the same, *i.e.*, a remand for further proceedings and not outright reversal for benefits.

5. Whether the ALJ presented an improper hypothetical question to the VE.

Plaintiff contends that the ALJ erred by relying upon flawed vocational testimony as the hypothetical questions presented to the VE failed to account for limitations supported by the evidence of record, including the opinions of Dr. Vrishabhendra and Ms. Burnett. Given the Court's finding that the ALJ failed to properly weigh the medical opinions of record or formulate an RFC which accommodates plaintiff's moderate limitations in concentration, persistence or pace, the hypothetical questions presented to the VE do not properly reflect plaintiff's

35

impairments and/or limitations. The ALJ therefore erred by relying on this vocational testimony to carry his burden at Step Five of the sequential evaluation process. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's impairments). Because the ALJ's hypothetical questions failed to accurately portray plaintiff's impairments, the VE's testimony in response thereto does not constitute substantial evidence that plaintiff could perform the work identified by the VE. Therefore, plaintiff's final assignment of error should be sustained.

**IV. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings, including an assessment of the severity of plaintiff's depression and PTSD; redetermination of the weight to be accorded to the opinion evidence of record; reconsideration of plaintiff's RFC; reassessment of plaintiff's credibility; and vocational considerations consistent with this opinion.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: _5/7/14_

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

NEVA D. ENGEL,                                        Case No. 1:13-cv-318
     Plaintiff,                                   Beckwith, J.
                                                      Litkovitz, M.J.

   vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.   If the

Report and Recommendation is based in whole or in part upon matters occurring on the record at

an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or

such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless

the assigned District Judge otherwise directs.   A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).